VAWTER et al. v. FEDERAL LAND BANK OF LOUISVILLE et al.—103 S. W. (2d) 599.

Western Section. February 21, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

Taylor, Adams & Freeman and Holmes & Holmes, all of Trenton,. for complainants.

Karl Wilkes, of Jackson, and Keaton & Newman, of Trenton, for defendants.

SENTER, J. The original bill was filed in this cause by complainants, W. R. Vawter and wife, Emily Vawter, against the defendants Federal Land Bank of Louisville; Jackson National Farm Loan Association; F. L. Kerr, trustee; Mrs. A. V. Patton, and G. O. Yates, seeking to have a sale of a farm set aside, said sale alleged to have been made by defendant G. O. Yates to defendant Mrs. A. V. Patton on August 31, 1934, as being void and of no effect; and seeking to enjoin the defendant Mrs. A. V. Patton from transferring or conveying or encumbering the tract of land.

The bill alleges with considerable detail that complainant W. R. Vawter is the owner in fee, subject to certain encumbrances set out in the bill, of a certain tract of farm land situated in Gibson county, Tenn., setting forth the description thereof; it being fur-

ther alleged that on the 24th day of April, 1933, the complainants procured a farm loan for the sum of $7,500 to be repaid in semiannual installments or amortization payments; that said loan was evidenced by a note executed by complainants and secured by a trust deed to a named trustee; that thereafter the defendant F. L. Kerr had been substituted in the place and stead of the named trustee.

It is alleged that complainants from time to time made payments on account of the principal and interest as provided by the terms of the note and trust deed; that prior to January 1, 1934, being in arrears, they were granted by the Federal Land Bank of Louisville an extension of time in which to make up the amount delinquent. It is further alleged that complainants were beneficiaries of the Act of Congress which provided that debtors in their class might for a term of five years (Act Cong. May 12, 1933, section 24, 48 Stat. 43, see 12 U. S. C. A., section 771 (12), from and after July, 1933, be relieved from making payment on account of principal, and during this period only required to make semiannual payments due on account of interest.

Other allegations are contained in the bill with reference to the details of said loan. It is further alleged that on January 1, 1934, complainants did not have the money with which to make the interest payment. It being further alleged that complainants by letter advised the defendant Federal Land Bank of their inability to meet the interest payment of January 1, 1934, and explained that they were then expecting to receive money from their cotton withdrawal contract with the federal government; that they also conferred with defendant G. O. Yates, the field representative of the bank in this territory, and by whom they were assured that the bank would not foreclose pending the receipt of funds from the United States government on account of the cotton withdrawal contract, and that it was mutually agreed and understood by and between complainants and the Federal Land Bank that complainants would make the interest payment as soon as he received the expected funds from said source and that pending that event the bank would not foreclose its trust deed.

It is further alleged that because of conditions beyond the control of complainants there was a considerable delay in the issuance of checks on the cotton contracts and that complainants did not receive the cotton contract checks from the federal government until August 21, 1934; that in the meantime the interest of July 1, 1934, became due.

It is alleged that on the day after receiving the cotton check, complainant W. R. Vawter mailed to the Federal Land Bank of Louisville two cashier's checks, one for the sum of $142.98 to cover the interest installment due July 1, 1934, and the other for $145.48 to pay the installments due January 1, 1934, with accumulated inter-

est; that these checks were received by the Federal Land Bank on August 21, 1934; that the check for $142.98 was accepted and indorsed by said bank; that the other check was held by it until August 30, 1934, when that check, together with its own check for the refund of $142.98, were mailed to complainant W. R. Vawter by the Federal Land Bank; that complainants have never accepted said refund, and do not now accept it, and tender the same to the makers, along with the cashier's check for $145.48.

It is further alleged that on the —— day of August, 1934, defendant F. L. Kerr, as substitute trustee, had advertised the land for sale, the same to be sold on August 31, 1934; that the advertisement for the sale of the land was published in a newspaper at Trenton, Tenn., but that complainants had not seen the advertisement; that complainants had no actual knowledge of the contemplated foreclosure of the trust deed until the 28th day of August, 1934, when complainant W. R. Vawter received a telegram advising that the property would be sold; that this information was received too late for complainants to take any steps to postpone or prevent the sale; that the sale was had as advertised on the 31st day of August, 1934, when the defendant Mrs. A. V. Patton became the purchaser.

The bill charges that the attempted sale was void for the following reasons: First, that the substitute trustee, F. L. Kerr, did not, in person, make the sale, was not present, and was not in Gibson county, Tenn., on the day the sale was made, but that the sale was made by defendant G. O. Yates, who was without power or authority to act in the premises; second, because the Federal Land Bank of Louisville had received, accepted, and held, for at least five days, complainant's checks; and complainants were not in arrears and the loan was not then delinquent; third, because the sale was not had at the instance of the Federal Land Bank of Louisville, but at the instance of the defendant Jackson National Farm Loan Association; that the last-named defendant claimed the right to foreclose by virtue of certain provisions contained in the trust deed, and by reason of having paid $214.48, the amount of the "amortization payment due on January 1, 1934," it being alleged that the defendant Jackson National Farm Loan Association had not at any time before the sale paid to the Federal Land Bank of Louisville the said sum of $214.48, nor any other sum; and that if said loan association had paid that sum, or any sum, to the Federal Land Bank of Louisville, such payment was, in the circumstances, voluntary and officious. Other allegations are contained in the bill not necessary to be referred to at this time.

The defendant Mrs. A. V. Patton filed an answer and a cross-bill. She admitted that she became the purchaser of the property at the foreclosure sale; that she had fully complied with the terms of the sale, and paid a valuable consideration for said property; and that

she was entitled as the purchaser of said property at said trustee's sale to receive a deed from the trustee to said property. She alleged in her answer and cross-bill that complainants were in possession of said property; that valuable crops were being grown on the property; and that she, as the purchaser, was entitled to the growing crops then nearing harvent time. She alleged that unless restrained by writs of injunction, complainants would gather and dispose of the crops and that she was entitled to have a receiver appointed to take charge of, harvest, and market the growing crops, and prayed for writs of injunction and the appointment of a receiver.

The complainants answered the cross-bill and admitted that it was a proper case for the appointment of a receiver and a receiver was accordingly appointed.

The defendants National Farm Loan Association and the Federal Land Bank of Louisville filed separate answers to the bill. They both admit that W. R. Vawter was the owner in fee of the property involved, subject to the encumbrances referred to; they both admitted that complainants were in default prior to January 1, 1934, and that they were granted an extension of time for the payment of installments due January 1, 1932; July 1, 1932; January 1, 1933, and July 1, 1933, amounting to the sum of $262.50 for each payment.

The defendant Jackson National Farm Loan Association denied that complainants were only required to pay $142.78 on January 1, 1934, but avers that the payment due and owing on said date was $214.83; that the Federal Land Bank sent it a notice of the amount due January 1, 1934, which was $214.83. This defendant alleges that it had considerable correspondence with the Federal Land Bank relative to the condition of the loan and many conversations through its officers and agents with W. R. Vawter; that Vawter made many promises to take up the installments to the Federal Land Bank on January 1, 1934, but failed to keep these promises.

This defendant further averred that its board of directors met on June 2, 1934, and adopted a resolution directing that the trust deed be foreclosed because of the delinquencies and defaults of complainants, and that delinquent taxes had accrued against the property amounting to approximately $1,000; that in accordance with the resolution the secretary-treasurer of the association forwarded to the Federal Land Bank of Louisville its check dated May 28, 1934, payable to the Federal Land Bank for the sum of $214.83, representing the installment on the Vawter loan due January 1, 1934; that said check was received and accepted by the Federal Land Bank and paid on or about June 15, 1934.

This defendant further alleged that it had received advice from the trustee of Gibson county that the delinquent taxes on this property amounted to approximately $1,000; that it had received reports from the field representative of the Federal Land Bank to the effect

that the farm was being permitted by its owner to become run down and that complainants were not then living on the farm and had removed to Jackson, Tenn., and were collecting the rents and income from the farm, and not meeting any of the payments, and permitting the property to become in bad repair and delinquent taxes to accumulate, and that it was in this situation that the association requested the land bank to foreclose the mortgage; and that the foreclosure sale occurred on August 31, 1934, at public auction at the time and place as advertised when Mrs. A. V. Patton became the purchaser.

This defendant denied that complainants were not in default, but stated that they were in default for the January 1, 1934, and the July 1, 1934, installments, and that, in addition thereto, complainants had permitted the taxes against the property to accumulate against the property for a number of years. This defendant stated that it did not know anything with reference to the legality of the sale conducted by F. L. Kerr, substitute trustee, and neither admits nor denies the allegations in the bill as to this matter, but demanded proof.

The Federal Land Bank by its answer, after admitting certain allegations contained in the bill, stated that complainants for value received, executed, and delivered to said bank a promissory note dated April 24, 1922, and filed a copy of the note as an exhibit; that said note was for the principal sum of $7,500 with interest at the rate of 6 per cent. per annum upon the principal sum remaining unpaid from time to time, and to pay the principal sum on the amortization plan.

The answer alleged that complainants on said date also executed, acknowledged, and delivered to the bank a mortgage or trust deed, copy of which is filed as an exhibit, securing said note, which said trust deed was duly placed to record in the register's office of Gibson county, Tenn. The answer of this defendant alleges that it is the owner and holder of this said deed of trust and had been since its execution. It admitted that complainants from time to time had made payments on account of principal and interest as provided by the terms of the trust deed except as otherwise set out in the answer. It admitted that certain extensions had been granted to complainants, but stated that such extensions applied only to delinquencies maturing before July 12, 1933, and that such postponed payment should be made at the time each succeeding semiannual installment became due, one-twentieth of the postponed payment until the amount of such payment had been made, and that complainants had failed to make such payments as therein provided.

By its answer this defendant alleged that complainants were in default on the amortization installment of $214.83 due and payable January 1, 1934, an amortization installment of $215.38 due and

payable July 1, 1934, and delinquent taxes in the amount of $1,000, which constituted a further default under the terms of the trust deed.

It admits receiving the two checks from complainant about August 23, 1934, one for the sum of $145.48, and the other for the sum of $142.98, but stated that these payments were refunded complainant because the Jackson National Farm Loan Association had paid the January 1, 1934, installment of $214.83 on June 13, 1934, and that it asked the trustee to foreclose the trust deed according to the rights and powers given the association in the trust deed.

The answer states that the two checks were returned because the bank had no right to accept them. It admits that F. L. Kerr was duly appointed substitute trustee on July 3, 1934, and that such substitution was duly recorded on July 23, 1934, in the register's office of Gibson county, Tenn.; that F. L. Kerr, substitute trustee, caused notice of sale to be published as provided in its trust deed; and that said publication of the sale was regular and in strict compliance with the terms of the trust deed and with the law. The answer admitted the sale of the property and that Mrs. Patton became the purchaser at the sale as the highest bidder; that she bid and paid the sum of $244.38 for the property and bought same subject to the loan of the Federal Land Bank.

It denied that the trustee's sale was void and denied that it was not conducted according to the terms of the trust deed, and averred that the sale was regular, legal, and valid. The answer further avers that the presence of the substitute trustee at the foreclosure sale was not necessary, because the trust deed specifically provided that a foreclosure sale might be conducted by the trustee or an agent or attorney selected by them, and that the trust deed provides:

"It is agreed by the party of the first part that should such sale be made by the party of the third part, he need not personally attend and conduct the same, but at his option he can have the sale conducted by an agent or attorney selected by him."

The answer sets out certain other provisions of the trust deed which authorized the foreclosure of the trust deed at the instance of the Jackson National Farm Loan Association under certain conditions made and provided in the trust deed. The answer seeks that the injunction previously issued be dissolved and that the substitute trustee be decreed the right to deliver his trustee's deed to the purchaser at the trustee's sale.

The defendants Kerr and G. O. Yates each filed answers by which they adopted the answers of the Federal Land Bank and the allegations and averments contained therein.

At the hearing of the cause the chancellor dismissed the original bill and held and so decreed that because of the default made by complainants in their payments that the substitute trustee was authorized to foreclose the trust deed; that the foreclosure of the

trust deed by the substitute trustee, and acting through his agent, G. O. Yates, was regular and constituted a legal sale of the property; that the purchaser at the sale, Mrs. Patton, was entitled to have the substitute trustee execute to her a deed to the property; and that she was also entitled to the proceeds from the crops under the receivership.

From this decree, complainants have appealed to this court and have assigned numerous errors.

The first two assignments of error challenge the action of the chancellor in overruling the objections of complainants to certain evidence bearing on the subject of the alleged appointment by the substitute trustee. Kerr, of the field man, G. O. Yates, to make the sale.

The third assignment is directed to the finding of the chancellor and the decree to the effect that the foreclosure sale was valid.

Under the last assignment of error, it is the contention of appellants that complainants were not in arrears or in default at the time the property was advertised and sold under the trust deed, and that the bank by cashing one of the checks and holding the other accepted the payments representing the January 1, 1934, and the July 1, 1934, payments which were in arrears.

We do not think that this contention can be sustained. In the first place, these checks did not represent the actual amount of the respective payments. The first check was for only $145.48, which was intended to cover the January 1, 1934, payment. According to the great weight of the evidence, the January 1st payment was $214.83. The bank explained that in the usual routine these checks were received and one of the checks was actually indorsed and cashed by inadvertence, and that as soon as it was discovered the bank promptly sent its own check with the other check of complainant back to complainant, explaining why the checks were returned, and that the trust deed was then in the course of foreclosure.

Delinquent taxes on the property had accumulated to about the sum of $1,000, and this, under the terms of the trust deed, operated as a default in the conditions and terms of the trust deed, authorizing a foreclosure. The loan was obtained through the Jackson National Farm Loan Association of which complainant Vawter was a member, and it was his association which handled the loan. The association had to indorse all notes for its members. The association made the payment to cover the installment of January 1, 1934, as it was authorized to do. It is true that the association procured the Federal Land Bank to foreclose the trust deed. The trust deed made full provision for this course and the request was in accord with the provisions and conditions of the trust deed.

Under this assignment, the real contention involved on this appeal is made to the effect that the sale was void because it was not con-

ducted by F. L. Kerr, the substitute trustee, or by any agent duly appointed and authorized to conduct the sale. ·

It appears that G. O. Yates is employed by the Federal Land Bank as its field agent, and that this property and loan were within the territory assigned to Yates. It appears that when the request was received by the Jackson National Farm Loan Association that this trust deed be foreclosed, the substitute trustee, F. L. Kerr, prepared the advertisement for the sale of the property under the terms of the trust deed, and the manager of the credit department mailed this advertisement to Yates with instructions that it be published in a newspaper in Gibson county, Tenn.; as provided in the trust deed; also was inclosed the appointment as substitute trustee of F. L. Kerr to be recorded in the register's office of Gibson county, Tenn., in advance of the sale. There was a letter inclosed, written by W. B. Wilkinson, manager of the credit and collection department for the bank, advising Yates to attend the sale and to make his report thereon. The advertisement inclosed in this letter bore the signature of F. L. Kerr, the substitute trustee. Yates took the advertisement so signed by Kerr to a weekly newspaper in Trenton, and arranged for its publication. On the date of the sale as advertised, Yates cried the sale. Kerr was not present at the time of the sale, nor was he in Gibson county, Tenn., at the time of the sale.

We think it clear from the record in this case that Kerr authorized Mr. Wilkinson to send the advertisement and the power of attorney, together with the letter of instructions, to Yates.

Appellants quote the rule stated in 27 Cyc., 968, wherein it is stated:

"The trustee cannot lawfully, delegate to another person the powers granted to him by the deed, although he may employ an agent to perform the merely mechanical parts of a foreclosure under the deed."

Appellants concede that a trustee under a trust deed may employ an agent to perform the merely mechanical parts of a foreclosure under a trust deed, but it is the insistence that this record does not show that Yates was ever appointed to act as the agent of the substitute trustee in making this sale. It is urged that his only appointment was the letter written to him by Wilkinson, inclosing the advertisement and the appointment of the substitute trustee, Kerr, to be recorded, and that this letter did not undertake to appoint Yates to make the sale, but merely directed that he attend the sale and make a report of the same.

It is further contended by appellant that even though Yates had been appointed by Kerr to conduct the sale, that it was the duty of Kerr, as the trustee, to be present, and see that the sale was fairly conducted, and conducted according to the terms of the trust deed, and that the agent could only cry the sale and do the purely me-

chanical things incident thereto, but under the immediate supervision and control of the trustee.

There is a provision in the trust deed wherein it is specifically provided:

"It is agreed by parties of the first part that should such sale be made by the party of the third part, he need not personally attend and conduct the same, but at his option he can have the sale conducted by an agent or attorney selected by him."

This provision becomes as much a part of the trust deed as any other. While it is ordinarily true that the trustee is appointed to serve the mutual interests of all parties concerned with the trust, the mortgagor names the trustee in the trust instrument, and it is a personal appointment. However, the mortgagor specifically contracted that if the trustee named in the instrument should not serve, or resign, or for any reason, a substitute trustee may be named by the holder of the debt in writing. This provision was strictly complied with and F. L. Kerr regularly became the substitute trustee in strict compliance with the provision of the trust deed. As the substitute trustee, he was given all the powers and all the authority and assumed all the duties of the trustee first named. It was therefore clearly within his authority to appoint some one else to conduct the sale.

However, in the instant case, the agent, Yates, did nothing more than to cry the sale and to report the result thereof. He had nothing to do with advertising the property for sale except to deliver the advertisement prepared and signed by the substitute trustee to the newspaper where it was duly published. He never assumed to execute a deed to the purchaser. So far as this record shows, all Yates did with reference to the sale was simply to cry the sale and receive the bids and to announce the highest bidder as the purchaser. This was the mechanical part of the transaction.

We are therefore of the opinion that the only question presented is with reference to his appointment by Kerr. We cannot agree to the contention made by appellants that the record fails to show that Kerr appointed Yates to act as his agent in conducting the sale. Kerr prepared the advertisement and delivered the advertisement to Wilkinson, in charge of the credit and collection department, with instructions that it be sent to Yates with directions that Yates attend the sale and make the report.

We are also of the opinion that the testimony of Kerr on this subject was competent. While it is true he referred to the letter written by Wilkinson as being Yates' authority to act, yet when his evidence is considered as a whole, we think his meaning to the effect that he had appointed Yates to make the sale is clear and merely refers to the letter written by Wilkinson as an incident to the appointment.

A part of the testimony of Yates was objected to by complainants, and challenged by the assignments of error, was probably incompetent, but we do not think that it was prejudicial, and certainly could not have changed the result of the finding and decree of the chancellor.

Criticism is made of a certain finding by the chancellor to the effect that the general custom of foreclosures by the Federal Land Bank showed that this sale was regularly conducted. We do not so interpret the decree of the chancellor. It is true he does add that this appeared to be the custom and the sale in line with the custom. This, however, followed the specific holding by the chancellor that Yates was the agent of Kerr in crying the sale. To say the least of it, the question of the general custom in the present case would not be material, since we agree with the chancellor that the record sufficiently shows Yates to have been acting by the direction of F. L. Kerr in crying the sale and in making a report thereof.

■ Numerous authorities have been cited by the respective parties. We have examined the authorities cited, and do not find anything in any of the cases which would warrant a holding that under a contract such as is here under consideration, that it was necessary that the trustee be present in person at the sale.

It results that the assignments of error are accordingly overruled and the decree of the chancellor is affirmed.

■ The cost of this appeal will be paid by appellants, they having appealed in forma pauperis.

Anderson and Ketchum, JJ.. concur.